IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TIERONE BANK, | ) | 4:08CV3156 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| HARTFORD CASUALTY | ) | |
| INSURANCE COMPANY and | ) | |
| HARTFORD ACCIDENT AND | ) | |
| INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

On November 7, 2007, the plaintiff, TierOne Bank ("TierOne"), submitted a claim to the defendants, Hartford Casualty Insurance Company and Hartford Accident and Indemnity Company (collectively, "Hartford"), under a financial institution bond for losses incurred by TierOne after a mortgage servicing contractor failed to remit over $12 million in loan payments that it had collected. Hartford investigated the claim but had not taken a position on coverage as of July 18, 2008, when TierOne filed this diversity action for breach of contract, seeking recovery of the bond limit of $7.5 million, prejudgment interest under Neb. Rev. Stat.§45-103.02, and attorney fees under Neb. Rev. Stat. §44-359. Approximately 7 months later, after conducting certain discovery, Hartford informed TierOne that it had completed its investigation and determined the loss was covered. TierOne received payment of the $7.5 million bond limit from Hartford on February 19, 2009.

Cross-motions for summary judgment on the prejudgment interest issue were filed on April 30, 2009. TierOne claimed that it was entitled to recover the sum of $1,158,904.11, while Hartford took the position that no prejudgment interest was owing. On August 24, 2009, the court awarded TierOne $1,010,958.90 on its claim

for prejudgment interest, but deferred entry of judgment pending a determination of TierOne's claim for statutory attorney fees, which issue is now before the court.

TierOne requests an award of $402,558.99,[1] which includes: (1) $372,702.50 for 777.3 hours of work performed by the Milwaukee, Wisconsin law firm of Foley & Lardner LLP between July 1, 2008, and October 8, 2009; (2) $2,828.00 for 12.1 hours of work performed by local counsel, Woods & Aitken LLP of Lincoln, Nebraska, between August 7, 2008, and June 23, 2009; and (3) $27,028.49 for expenses incurred between July 10, 2008, and September 7, 2009. Hartford disputes the reasonableness of the fees charged by Foley & Lardner.

Evidence filed by TierOne in support of its motion for attorney fees includes: (1) the declaration of Bartholomew F. Reuter, a senior counsel in Foley & Lardner's insurance and reinsurance litigation group, and an attorney of record in this case, who provides a summary of the work performed by his firm and states that he personally charged TierOne $465 per hour from February 1, 2008, until January 31, 2009, and $510 per hour thereafter (filing 99); (2) the declaration of Thomas L. Shriner, Jr., a litigation partner with Foley & Lardner, and also an attorney of record in this case, who states that he charged $620 per hour from February 1, 2008, until January 31, 2009, and $635 per hour thereafter (filing 100); (3) the declaration of Jay O. Rothman, a Foley & Lardner partner and member of the firm's management committee, who opines that the rates charged by his firm "for the work performed in this lawsuit are reasonable and are in line with the rates charged by similarly situated firms for comparable matters" (filing 101); (4) the declaration of Ethan D. Lenz, a partner at Foley & Lardner, who states that he charged $560 per hour from

---

[1] TierOne's motion, which was filed on September 10, 2009, requests the entry of "an order awarding attorneys fees and expenses in the amount of $371,920.12 plus additional attorneys fees and expenses incurred after August 31, 2009." (Filing 97.) When filing its reply brief on October 8, 2009, TierOne increased its request by $30,638.87 for attorney fees (54.8 billable hours) and $1,500.37 for electronic legal research expenses associated with the preparation of the motion and briefs.

February 1, 2008, until January 31, 2009, and $595 per hour thereafter (filing 102); and (5) Mr. Reuter's supplemental declaration (filing 107-2). Exhibits attached to Mr. Reuter's original declaration include spreadsheets showing fees charged by Foley & Lardner and Woods & Aitken for the period from July 1, 2008, until September 1, 2009 (filing 99-3), and expenses billed to TierOne during that same period (filing 99-4). A spreadsheet showing the fees and expenses billed by Foley & Lardner to TierOne after September 1, 2009, is attached to Mr. Reuter's supplement declaration (filing 107-4).

Evidence filed by Hartford in opposition to TierOne's motion includes: (1) the declaration of John S. Diaconis, an attorney with the firm of Bleakley Platt & Schmidt LLP in White Plains, New York, and a consulting claims manager and adjustor for an underwriting unit of Hartford, who opines that the hourly rates charged by Foley & Lardner were unreasonable, and the number of hours billed were excessive (filing 105-2); and (2) the declaration of Keith Witten, an attorney of record for Hartford in the case and a shareholder with the law firm of Gilliland & Hayes, P.A., in Overland Park, Kansas, who states that he and his co-counsel, Bernard L. Balkin, each charged $195 per hour for their services (filing 105-3).

Under Nebraska law, "[a]s a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. Section 44-359 is a fee-shifting statute which permits a successful litigant to recover attorney fees as a part of the judgment in certain actions against insurance companies." *Young v. Midwest Family Mut. Ins. Co.*, 753 N.W.2d 778, 781 (Neb. 2008) (footnote omitted). The statute provides in pertinent part:

> In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy . . . against any company, person, or association doing business in this state, the court, upon rendering judgment against such company, person, or association,

shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

Neb.Rev.Stat. § 44-359 (West, WESTLAW through 2008 legislation).[2]

"The determination of attorney fees awarded pursuant to § 44-359 is a matter within the discretion of the trial court." *Koehler v. Farmers Alliance Mut. Ins. Co.,* *566 N.W.2d 750, 755 (Neb. 1997)*. "There is no presumption of reasonableness placed on the amount offered by the party requesting fees." *Young, 753 N.W.2d* *at 783*. "To determine proper and reasonable attorney fees under § 44-359, it is necessary for the court to consider the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services." *Id.*

These nine factors allow the court to employ the "lodestar" method to determine a reasonable attorney fee award. *See Eicher v. Mid America Financial Inv.* *Corp., 702 N.W.2d 792, 806 (Neb. 2005)* (approving district court's use of "lodestar multiplier" to calculate award). "Under this method, the district court multiplies a reasonable number of hours for the work performed by a reasonable hourly rate. Next, the court may adjust the amount based upon the particular circumstances of the case." *Farmers Co-op Co. v. Senske & Son Transfer Co., 572 F.3d 492, 500 (8th Cir.* *2009)* (citations omitted).

---

[2] "For purposes of Chapter 44, unless the context otherwise requires, insurance shall mean a contract whereby one party, called the insurer, for a consideration, undertakes to pay money or its equivalent or to do an act valuable to another party, called the insured, or to his or her beneficiary, upon the happening of the hazard or peril insured against whereby the party insured or his or her beneficiary suffers loss or injury." Neb.Rev.Stat. § 44-102 (West, WESTLAW through 2008 legislation). Hartford does not dispute that the financial institution bond it issued to TierOne is a "type of insurance policy" for purposes of § 44-359.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Hartford does not contest the adequacy of the information contained in the spreadsheets submitted in support of TierOne's motion for attorney fees,[3] but it does point out that the description of services provided by Mr. Reuter on January 1 and 4, 2009, differ from the descriptions shown on an earlier spreadsheet that was sent to Hartford on March 2, 2009, in connection with a demand for payment. What was previously described as travel time between Milwaukee and Lincoln (filing 105-4, at 19-20) was changed to read "prepare for document production" and "attention to document production" (filing 99-3, at 14). While this discrepancy casts some doubt on the reliability of TierOne's documentation, it is not serious enough to warrant an overall reduction in the fee award. Nor will the billable hours for January 1 and 4, 2009, be disallowed on the basis that travel was involved. The Nebraska Supreme Court has permitted travel time by an out-of-state attorney to be considered when awarding attorney fees under § 44-359. *See Craig v. Farmers Mut. Ins. Co. of Nebraska*, 476 N.W.2d 529, 535 (Neb. 1991). *See also Rose Confections, Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381, 396 (8th Cir. 1987) (recovery of full hourly rate for attorney travel time is permitted unless district court determines in its discretion that such recovery would be unreasonable).

---

[3] Hartford also has not objected to TierOne's delayed filing of exhibits showing the attorney fees and expenses associated with the preparation of TierOne's motion and supporting brief. This billing information should have been filed at the same time as TierOne's motion and brief, rather than in conjunction with TierOne's reply to Hartford's opposing response. *See* NECivR 7.0.1(a)(2) & 54.3(b).

5

Hartford also complains that Foley & Lardner had too many attorneys assigned to the case. Mr. Diaconis, who for the past 29 years has devoted his practice almost exclusively to the handling and management of insurance claims and litigation, and who has been a consulting claims manager and adjustor for Hartford Financial since December 2007, states that he has "never approved a billing . . . of any invoice where 13 different timekeepers were involved, as in the Foley & Lardner billings. In fact, the Gilliland & Hayes invoices never had more than 3 timekeepers involved. The use of many different timekeepers is wasteful because it requires that each timekeeper be educated about whatever aspect of the case it is on which they are to perform services." (Filing 105-2, at 3-4, ¶ 15.) Mr. Reuter, on the other hand, indicates that he "assembled a team consisting mainly of first and second year attorneys to review and prepare documents for production to defendants. Employing this team of younger lawyers accelerated TierOne's ability to produce documents to defendants in a cost-effective manner." (Filing 99, at 3, ¶ 16.) Mr. Reuter also states that he "was scrupulous in the assignment of tasks to my legal team so as to avoid duplication of effort and incurring costs unnecessarily." (Filing 99, at 4, ¶ 18.) While Hartford's argument is not entirely without merit, it has failed to demonstrate that Mr. Reuter's explanation is untrue,[4] or that the total number of hours his firm devoted to the case was excessive.

On the evidence presented, the court finds that the number of hours claimed by TierOne for work performed on the case by all of its attorneys is reasonable. As will

---

[4] The spreadsheet that was provided to Hartford on March 2, 2009, includes a breakdown by timekeeper of hourly rates and the number of hours billed through January 31, 2009. Out of a total of 354.4 hours billed, Mr. Reuter accounted for 177.9 hours, Mr. Lenz for 71.0 hours, and Mr. Shriner for 33.7 hours. Eleven other timekeepers accounted for 71.8 hours, or roughly 20 percent of the total. In terms of dollars, Mssrs. Reuter, Lenz, and Shriner were responsible for $143,377.50, or about 88 percent, of their firm's total billings of $163,399.00. (Filing 105-4, at 25.) The spreadsheets submitted by TierOne in support of its motion for attorney fees do not include a similar breakdown by timekeeper.

6

be discussed below, however, the court agrees with Hartford that the hourly rates claimed for legal services provided by Foley & Lardner are excessive.

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)). *See also Farmers Co-op*, 572 F.3d at 500 ("relevant community" for determining hourly rates is place where case was tried). "In a case where the plaintiff does not use local counsel, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." *Emery*, 272 F.3d at 1048 (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-41 (8th Cir.1982) (en banc)). "In addition, attorneys specializing in complex areas of the law may be entitled to a higher, non-local rate because the attorneys' familiarity with law will enable them to handle the case in a shorter time period than local counsel." *Bone Shirt v. Hazeltine*, No. CIV 01-3032-KES, 2006 WL 1788307, at *2 (D.S.D. June 22, 2006) (citing *Planned Parenthood, Sioux Falls Clinic v. Miller,* 70 F.3d 517, 519 (8th Cir. 1995)).

There has been no showing by TierOne, which has its home office in Lincoln, Nebraska, that Woods & Aitken, or some other law firm in Lincoln or Omaha, was not fully capable of representing its interests in this litigation.[5] In fact, Woods & Aitken alone represented TierOne in an action filed against Hartford in this court in July 30, 2007, *TierOne Bank v. Hartford Fire Insurance Co.*, Case No. 4:07CV3199.

---

[5] From exhibits previously filed with reference to the cross-motions for summary judgment, it appears that Woods & Aitken sent TierOne's notice of claim to Hartford on August 10, 2007 (filing 69-5), but that Foley & Lardner was representing TierOne as of November 7, 2007, when a proof of loss was formally submitted to Hartford (filing 66-6).

That action involved a $1.5 million claim on the same financial institution bond, and was still pending when the present action was filed on July 18, 2008.[6]

Foley & Lardner does not appear to have any special expertise regarding financial institution bonds.  Mr. Reuter, who graduated from law school in 1999, merely states that he has "litigated more than a dozen insurance cases in state and federal courts across the nation" and has "published several articles on insurance coverage issues and give[n] speeches to legal professionals on current insurance topics."  (Filing 99, at 1, ¶ 2.)  Mr. Shriner has practiced law for 35 years, "regularly represent[s] banks in a variety of cases, including lender liability and loan participation cases," and has "litigated numerous insurance cases and a variety of claims under the UCC (including bank deposits, secured transactions, and letters of credit)."  (Filing 100, at 1, ¶ 3.)  Mr. Lenz has "been practicing insurance law for thirteen years." His practice "focuses on providing risk management and insurance coverage-related advice to many of the firm's commercial clients, which advice includes counseling on a wide variety of commercial and professional insurance programs."  (Filing 102, at 1, ¶ 2.)  Mr. Rothman indicates that Foley & Lardner "is a full-service law firm that operates on a national platform" (filing 101, at 1, ¶ 2), but no particulars are provided.

Hartford's two attorneys of record, who practice in the Kansas City area with the Gilliland & Hayes law firm, each charged $195 per hour for services rendered in this matter.  Mr. Witten has been practicing law since 1971, and since approximately 1980 "has focused on fidelity and surety claims, including claims under commercial crime and financial institution bond claims."  (Filing 105-3, at 2, ¶ 6.) Mr. Balkin has "practiced law for more than 55 years with emphasis in the fidelity and surety law field."  (Filing 105-3, at 3, ¶ 15.)  Mr. Diaconis' regular hourly rate for handling

---

[6] The matter was finally resolved on December 9, 2008, when the court ruled on cross-motions for summary judgment that there was no coverage under the bond for TierOne's loss.

clams involving fidelity bonds has never exceeded $225, and for this matter he only charged Hartford at the rate of $125 per hour. (Filing 105-2, at 3, ¶ 11.)  Two other attorneys who were hired by Hartford to investigate the claim, James A. Black, Jr., and Jeffrey M. Paskert, of Mills Paskert Divers P.A. in Tampa, Florida, each charged $250 per hour. (Filing 105-2, at 3, ¶ 12.)  Hartford's evidence is only marginally relevant to determining the prevailing market rate.  In addition to the geographical differences involved, it is common knowledge that insurance companies routinely require their outside counsel to charge reduced hourly rates for defense work.  Also, Mr. Diaconis' claims-handling work for Hartford is not similar to the work performed by trial attorneys.  Hartford's evidence therefore will be given little or no weight.

TierOne also has not presented any direct evidence of the prevailing market rate, but the spreadsheet of billings by Woods & Aitken, a leading Nebraska law firm, shows that one of the partners in that firm, Bruce A. Smith, charged TierOne $240 per hour for his services in this case.  Mr. Smith, who was also the attorney of record in TierOne's previously filed action against Hartford, has been practicing law longer than Mr. Reuter and is well-regarded in the Lincoln legal community.  His hourly rate is less than the rates charged by Foley & Lardner's first-year associates.

"When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir.2005).  To my knowledge, the hourly rates charged by Foley & Lardner are excessive when compared to prevailing rates in Lincoln or Omaha. This is generally borne out by a survey of Westlaw-reported decisions from this court over the past several years involving attorney fee awards. *See, e.g., United States v. $104,160.00 in U.S. Currency*, No. 8:08CCV463, 2009 WL 3839340, at *2 (D.Neb. Nov. 17, 2009) (Bataillon, J.) ($200 hourly rate for experienced Omaha attorney representing claimant in civil forfeiture action was reasonable in this locality); *Sheriff v. Midwest Health Partners, P.C.,* No. 8:07CV475, 2009 WL 2992513, at *10 (D.Neb. Sep. 16, 2009) (Thalken, M.J.) (in Title VII action, Omaha attorneys' hourly

rates of between $200 and $300 appeared consistent with hourly rates in the relevant market based on evidence in the record); *Hirsh v. Lecuona*, No. 8:06CV13, 2008 WL 4457690, at *2 (D.Neb. Sep. 26, 2008) (Bataillon, J.) (approving $75,000 fee award in § 1983 action where judgment exceeded $1 million and plaintiff's counsels' hourly rates of between $135 and $185 were reasonable and in line with prevailing rates in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation); *Lohmeier v. Bancwise Real Estate Services, L.L.C.*, No. 8:06CV578, 2008 WL 351657, at *2 (D.Neb. Feb. 7, 2008) (Smith Camp, J.) ($200 hourly rate for Omaha attorney with more than 30 years' litigation experience and $150 hourly rate for his associate reflected appropriate market rates for services provided in ADEA case); *Chief Automotive Systems, Inc. v. Asterino*, Nos. 4:97CV3017 & 8:07CV58, 2008 WL 151271, at *4 (D.Neb. Jan. 11, 2008) (Kopf, J.) (awarding attorney fees as part of civil contempt sanctions and finding that hourly rates claimed of $115 to $295 were within range lawyers practicing in this court charge for work of similar complexity); *McKnight v. Bentwood Dental Group, Inc.*, No. 8:04CV642, 2007 WL 2688899, at *2 (D.Neb. Sep. 13, 2007) (Bataillon, J.) ($150 per hour was reasonable rate for attorney in ERISA case); *Schreiber v. Nebraska*, No. 8:05CV537, 2007 WL 2030290, at *4 (D.Neb. July 10, 2007) (Smith Camp, J.) ($200 and $225 per hour were reasonable rates for attorneys in Title VII case); *Developmental Services of Nebraska, Inc. v. City of Lincoln*, No. 4:04CV3272, 2007 WL 1959244, at *1 (D.Neb. July 2, 2007) (Kopf, J.) (awarding $250,000 in attorney fees in Fair Housing Act case after reducing hourly rates to between $125 and $300 to bring in line with the relevant market for lawyers of comparable skill and experience); *Dahlgren v. First National Bank of Holdrege*, No. 8:05CV15, 2007 WL 397009, at *3 (D.Neb. Feb. 1, 2007) (stating it would not be reasonable in RICO Act case to set lodestar higher than $265 and $225 per hour for experienced Lincoln attorneys) (Kopf, J.), *rev'd on other grounds*, 533 F.3d 681 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 1041 (2009); *Local 22 Intern. Broth. of Elec. Workers v. Sadler Elec., Inc.*, No. 8:05CV523, 2006 WL 3511324, at *4 (D.Neb. Dec. 5, 2006) (Smith Camp, J.) (in ERISA case, blended hourly rate of $180 was reasonable for a litigation

10

team of two attorneys in a Kansas City law firm where one had 23 years' experience in labor and employment law and the other was a first-year associate); *Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, No. 8:03CV311, 2006 WL 2805259, at *2 (D.Neb. Sept. 28, 2006) (Bataillon, J.) (in Cable Communications Act case, hourly attorney fees of $125, $175, and $250 for Omaha attorneys were reasonable), *aff'd*, 491 F.3d 938 (8th Cir. 2007); *Wilson v. Life Ins. Co. of North America*, No. 4:05CV3133, 2006 WL 1700281, at *1 (D. Neb. June 15, 2006) (Kopf, J.) (in ERISA case, hourly rates of $175 for a law firm partner and $125 for an associate were reasonable and, according to affidavits filed by two knowledgeable Lincoln attorneys, conformed to the average rates charged in Lincoln); *Ollis v. Hearthstone Homes, Inc.*, No. 8:05CV119, 2006 WL 1700077, at *8 (D. Neb. June 12, 2006) (Smith Camp, J.) (in employment discrimination case, hourly rates customarily charged for litigation by Omaha law firm, of $200 for attorney with 39 years' experience and $175 for less experienced attorney, were reasonable); *New Hope Fellowship, Inc. v. City of Omaha*, No. 8:04CV259, 2006 WL 1479030, at *3-4 (D.Neb. May 17, 2006) (Dawson, J.) (in Fair Housing Act case, hourly rates claimed by a leading Omaha law firm were reduced from $150 to $125 for an associate with less than 3 years' experience, from $160 to $125 for an associate with 4 years' experience, from $280 to $250 for a partner and former Nebraska Supreme Court Justice, from $265 to $250 for another partner who had practiced employment discrimination law for 16 years, and from $100 to $50 for paralegal services; however, a $300 hourly rate for a partner with specialized experience in litigating FHA cases across the United States was reasonable, considering efficient handling of this case); *Diehm v. City of Omaha*, No. 8:04CV130, 2006 WL 753192, at *2 (D.Neb. Mar. 22, 2006) (Bataillon, J.) (in employment discrimination case, hourly rate of $175 for partner in Omaha law firm with 16 years' experience in labor and employment law was a reasonable and customary charge for his services); *Rockwell v. Talbott, Adams & Moore, Inc.*, No. 8:04CV24, 2006 WL 436041, at * 1 (D.Neb. Feb. 21, 2006) (in Fair Debt Collection Practices Act case, hourly rates between $115 and $145 charged by attorney with 5 years' experience were reasonable); *Shiller v. Sarpy County*, No. 8:03CV365, 2005

WL 3032516, at *3-4 (D .Neb. Nov. 11, 2005) (Smith Camp, J.) (in employment discrimination case, hourly rate of $175 charged by Omaha law firm partner with 8 years' experience in labor and employment law was reasonable); *Reed v. Shenandoah Memorial Hosp.*, No. 8:01 CV435, 2002 WL 1964826, at *4 (D.Neb. Aug. 12, 2002) (Bataillon, J.) (in ERISA case, hourly rates of $105 to $160 for attorneys in Omaha law firm were reasonable); *ACLU Nebraska Foundation v. City of Plattsmouth*, 199 F.Supp.2d 964, 968 (D.Neb.2002) (Kopf, J.) (in First Amendment case, hourly rates of $120 and $125 for two Lincoln attorneys were reasonable); *U & I Sanitation v. City of Columbus*, 112 F.Supp.2d 902, 904-05 (D.Neb.2000) (Kopf, J.) (in non-jury Commerce Clause case, reasonable hourly rate for experienced lead counsel was $125, not the requested rate of $150).

Foley & Lardner's "blended" hourly rate in this case, computed by dividing total billings of $372,702.50 by 777.3 total hours billed, is equal to $479.48, which is almost twice the hourly rate that was charged by TierOne's local counsel. Given the absence of other evidence concerning the rates ordinarily charged in this community for similar work, the court finds that Mr. Smith's hourly rate of $240 is a reasonable hourly rate for work performed by both firms.[7] Applying this rate, the "lodestar" is $189,380.00 ($186,552.00 for Foley & Lardner's services + $2,828.00 for Woods & Aitken's services). Hartford does not suggest making any downward adjustments to the lodestar, and TierOne does not suggest making any upward adjustments. Consequently, no adjustments will be made.

------

[7] In 2007, the undersigned district judge approved a blended hourly rate of approximately $220 in a Fair Housing Act case involving over 1,100 billable hours of work by the plaintiff's law firm, *see Developmental Services*, 2007 WL 1959244, but rejected as excessive a blended hourly rate of approximately $180 in a RICO action involving 7,700 billable hours of work, *see Dahlgren*, 2007 WL 397009. In the *Developmental Services* case, nearly all of the billable hours were attributable to the lead attorney and his "second chair", while in the *Dahlgren* case the two principal timekeepers accounted only for about one-half of the total billable hours.

Hartford also makes no objection to the $27,028.49 in expenses that are claimed as part of TierOne's attorney fees.[8] That being the case, TierOne will be awarded this amount in addition to the lodestar of $189,380.00. The total attorney fee award therefore will be $216,408.49.

Accordingly,


IT IS ORDERED that:

1.    The plaintiff's motion for attorney fees (filing 97) is granted in part and denied in part, as follows:

    a.    The plaintiff shall recover from the defendants as attorney fees the sum of $216,408.49.

    b.    In all other respects the motion is denied.

2.    Final judgment shall be entered be separate document.

_____

  [8]   The Nebraska Supreme Court has allowed for the recovery of a law firm's reimbursable expenses under § 44-359. *See National American Ins. Co. of Nebraska, Inc. v. Continental Western Ins. Co.*, 502 N.W.2d 817, 825 (Neb. 1993) (award of fees for the cost of expert witnesses and photocopying was proper under § 44-359); *Craig*, 476 N.W.2d at 535 (affirming an award of attorney fees which included air travel expenses incurred by the attorney); *Schmer v. Hawkeye-Security Ins. Co.*, 230 N.W.2d 216, 218-19 (Neb. 1975) (upholding an award of attorney fees of $2,460.51 plus $615.66 for expenses of an undisclosed nature). *But see Young*, 753 N.W.2d at 784 (Neb. 2008) (district court erred in awarding $5,123.17 to plaintiffs for expert witness fees and other items of expense which are not taxable as court costs and not recoverable under § 44-359).

December 8, 2009.                    BY THE COURT:

                                    *Richard G. Kopf*
                                    United States District Judge

---

  *This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.